Okay, the next case on calendar is officially captained in the event of Rebus v. Rail Service Delivery Service. Rail Delivery Service. Morning, Your Honor. Known by other names as well. My name is Stephen Glick, and I'd like to reserve 15 minutes for rebuttal. Okay, all right. Unless there's a lot of questions. I think we've briefed everything, and I want to go directly to the Court's recent question on the new prime in Arctic. And my first feeling is that, and I've read both cases, we don't need to consider whether the Act, we're talking about the Interstate Commerce Commission Termination Act, is retroactive in this case. Because in this case, we're asking for injunctive relief only. It's only prospective. We're not asking for damages for what happened before January 1, 1996. As a matter of fact, if you read the pretrial order, the stipulation there is that the defendants were doing the act that we're asking to, the acts, excuse me, that we're asking to be enjoined at the time of the trial. They were doing them all the way from 1996 up until the time of trial. Presumably, they're still doing them now. But the problem with that argument, Mr. Glick, is you can't bring the action to seek injunctive relief unless and until Congress has conferred standing on your clients to seek some form of relief, whether it be damages or an injunction. And the Act, as I understand it, in essence created a new cause of action, which was to give private parties the right to bring such actions, which used to be brought, as I understand it, by either the commission itself or perhaps it got moved to the Department of Transportation. I'm not sure. But it used to be brought only by the government. So why isn't this situation covered by the Eighth Circuit decision? Well, the Eighth Circuit didn't look at the difference between the retroactive, what had happened before 1996 and what happened after 1996. Two of my clients, for example, Renteria and Pineda, in those two cases, they were working for this company without this protection, without these laws in place after the Act was passed. But working under a contract which had already been signed, isn't that the key distinction? Yeah. Well, actually, the New Prime, I was rereading New Prime. In New Prime, which is what you're talking about, the Eighth Circuit case, they had leases. My clients, yes, were working under contracts, but those contracts were not leases. They were contracts that had to do with insurance, et cetera. But they did not have the leases. Let me ask the question in a different way. Was there a new written arrangement, whether we call it a lease or a contract, that was entered into by any of your clients after the Act went into effect? No. No. So under whatever the terms of the agreement are, every time they pick up a load and deliver it somewhere, that's not considered to be a separate engagement? Well, that wasn't considered by the court to be a – I mean, no one considered it like that. But I suppose you could consider it like that, yes. Well, but wouldn't you have to look to the terms of the written engagement or agreement or contract or whatever we're going to call it to answer that question? Yeah, yes. But if you look at the terms, they're not the ones that are required. The ones that were required before the Act was passed and the ones that were required after the Act was passed are the same, and they're not in it. They're not in that agreement. You know, it's kind of like you have the Sherman – I just saw it by analogy. I heard a lot of analogies in the audience this morning. You had the Sherman Antitrust Act, and people entered into a wage-fixing agreement before the Act was passed. Would that mean that after the Act's passed, they can just continue to fix prices after the Act has passed because they're kind of grandfathered in? I mean, that's basically what – Well, we're not talking about conduct. We're talking about standing. Who has the right to complain about it? And before 1996 or whatever the operative date is, it was either the Interstate Commerce Commission or the Department of Transportation. Now it's private individuals, and it creates a new cause of action that private individual owner-operators didn't have before that they have now. Well, you know, obviously I'm going to agree with the Arctic, the approach that they took in Arctic, because there was no change in the defendant's – to the defendant. You're just putting a different plaintiff in. Let me ask you a related question. I think another problem in this case, as I see it, is that I think you agreed in the district court before Judge Felser that, assuming some kind of conduct that violated the Act, that none of the plaintiffs was harmed by that, right? There was no injury. That's correct. And isn't injury an element of constitutional standing as opposed to standing under the statute? In other words, if you can't have injury, how can you seek redress? What is there to correct? That's an important question that you're asking. And I raised a couple times that the case should be remanded to the state court where that injury could be addressed. And as a matter of fact, the injunction was issued, and it really hasn't been appealed. The injunction that Judge Felser issued hasn't been appealed, and the time for appeal is gone on that. There is an injury to the – as I see it, Your Honor, there's injury under the Act because the Act says a person can bring an action for an injunction. It doesn't say an injured person. What do you mean injured under Act? All that – all you're saying is there's been a violation. Yes. A violation of a safety – of a regulation designed for the public safety. My client's a police officer. You also – all right. You also – you just said no one's appealed the injunction, but you're appealing in the sense that, aren't you, that the injunction doesn't go far enough? I'm not appealing the injunction that she gave. I want – I also want injunctions that include these other regulations, which are also for the public safety. My client's a member of the public, and he's a person, as described by the Act. He's not – maybe not a person injured, but it doesn't say you have to be a person injured. It just says a person can bring an action for an injunction. I just followed this statute, and apparently the judge must have found some injury to my client, notwithstanding what I said and what she said, because she issued the injunction and nobody appealed it. And now we have this – now we have this important injunction that protects the safety. Everybody agrees that. As a matter of fact, even the defendants in their reply – or in their answering brief say that it was not an abuse. You know, page 19, that Judge Felger did not abuse her discretion in issuing the injunction. No one's appealed it. No jurisdictional grounds or anything. It's – it's – to me, it's a done deal. I'm just trying to expand to get some more protection for the public. That's basically all I'm trying to do. And your – your clients are part of the targeted group for whom the statute has been passed? Yes, but everybody in this room is part of it, because these – these – So you say – so your reading is that anybody could bring a – at least an injunctive action under the statute? Yes. Any person? Yes, because it says – in the first part of the statute, it says an injured person can bring an action for damages. But then it goes on to say a person, not an injured person. A person. And, you know, this is something that went through Congress. They spent a lot of time debating it and so on. And it says a person can bring an action for an injunction. But if you had to be an injured person, apparently Judge Felger made that finding and it wasn't appealed. You know, it was – the jurisdictional finding was apparently made somehow, because it wasn't appealed. Well, there isn't any expressed jurisdictional finding, though, is there? I mean, you're saying it has to be inherent in the fact that she issued the injunction. Absolutely. That's the only way I can explain it. Okay. But if I asked you to give me a line and a page site, you wouldn't be able to show me where she's – I couldn't. But when I brought this action in, the State court is under 17200, and you didn't have to – you know, you didn't have to have any kind of standing like that. So that's where we're at. Okay. All right. Thank you, Mr. Williams. Thank you. Good morning, Your Honors. Greg Steffler. I represent three of the appellees, but for our purposes, we're prepared to submit on the briefs on the matters briefed, and I've been chosen to respond to the Court's question about standing. I'm sorry. I have Neil Lerner as the counsel. Oh, all right. I'm sorry. I missed it on my sheet here. Okay. Sorry. Go ahead. My pleasure. You still get to talk. Thank you. It's a great privilege. I don't know. You made it sound like you drew the short straw. Unfortunately, my life career as a lawyer was 30 years as a transportation lawyer. And so I'm here by virtue of the fact that I probably know more arcane nonsense about transportation than one could ever want to know in one's life. Okay. I want to stress a couple of things. First, to respond to Mr. Glick's comment at the end that you don't have to be injured. The statute somehow dispenses with the concept of injury. The title of the statute is Rights and Remedies of Persons Injured by Carriers or Brokers. If we, on page 32 of our brief, we talk about both the House report and the Senate report, both of which came out and talked about creating a new class of plaintiff and giving them a new way to recover for injuries. Whether one approaches that through injunctive relief or one approaches it through damages, Judge Felger found early in this case that damages were not allowable under the Interstate Commerce Termination Act, which, excuse me, I'll probably sometimes refer to that as ICTA because these names are long. In our case, all of the contracts were signed prior to January 1st of 1996, the initiation date of the Interstate Commerce Termination Act. In fact, two of them, the case involving rail delivery services and that involving RWA trucking, in both cases those contracts were over. They terminated before ICTA. In none of the cases were the contracts extant at the time the lawsuit was filed in December of 1997. In the initial … You're talking about this case or the other cases? I'm talking about all four of these cases. All four of these cases. In some of the cases they had expired. Yes, yes. But some of the contracts were still in force. Some of the contracts were in force after ICTA, but none of the contracts were in force at the time this lawsuit was filed originally. These were past contractors. The contractors were ended in … So none of these truckers, owner-operators, was engaged in any transportation with any of the defendant companies.  And only two of them were engaged with those companies following the January 1st of 1996. Okay, so at least there were two who had engaged in owner-operator activity under contracts post … That were signed before ICTA but were still operational during the first four months of ICTA. Okay, all right, fine. And so then they bring an action for damages and an action for injunctive relief. Yes. And the damages drops out. The damages drops out. And therefore, you're saying that throws them all out. They don't have standing to do anything. Well, the damages dropped out because Judge Felser decided the statute didn't include damages, as she read it. But then we still had the issue of injunctive relief to be tried. We had court trials. At the culmination of the court trials, Judge Felser decided not to grant an injunction. The case sat around for two years. She ruminated, I think, over the issue of public harm because the one violation she found in the four cases was a reference to the overlying motor carrier's responsibility to be first in line if the people were damaged, public were damaged. And the exact language that was contained in the statute wasn't extant in four of the leases. Those are the ones that are here today. The others she dismissed. We obviously take the position that the Hughes case makes a lot of sense. It makes a lot of sense in light of, and as New Prime applied it, it applies it well to these terms. The reason we feel that is because historically, as Judge Tolman said, the remedies that one had for motor carrier abuses were directed to the Interstate Commerce Commission, either the Bureau of Enforcement by way of a complaint to the department or by way of an actual proceeding, an ex parte proceeding before the department, asking the subpoena. They had an administrative remedy. It was an exclusively administrative remedy. What do the owner-operators have now? Right now they have the right to sue for damage. Correctly. But do they also have the option of an administrative remedy? Does the Department of Transportation Bureau? Can it serve the same function? Let me finish my question. Before ICTA, it was only the ICC, and they would go to the ICC and raise a complaint and say, the statute is not being lived, the truth in leasing isn't being lived up to. Post-ICTA, at least the way the case is articulated, it now has shifted the plaintiff from the ICC to the owner-operators directly. And my question is, is there also a continuation of the ICC-type role, but now shifted into the Department of Transportation? Yes. Okay. So an owner-operator could ‑‑I'm addressing the gap problem that Arctic raised, which is to say that if you take this hiatus and you say, well, gee, if your contract was entered into before ICTA when it was the ICC, only the people who come after now can take advantage of it because it can't be retroactive. So what happens to the people who have, as two of the owner-operators did, contracts arrangements that continued and bridged ICTA? You're saying that that group has no remedy. I understood the Arctic Express judge's concern that there would be a group of people left out if he found retroactivity, and he was courageous and interesting in the way he went about doing it. The problem is that the Department of Transportation today, ICCTA gave them continuing concurrent jurisdiction. The federal statutes continue to give the Attorney General the right to bring these actions. They continue to make the Department of Transportation and Federal Highway Administration, they give them the right to undertake enforcement proceedings or to, in fact, adjudicate if they choose to do that. Now, in the first new ‑‑ Does the owner-operator have a right to file a complaint with FHA or somebody, some other bureau of the Department of Transportation? Yes. And then is that subject to an administrative adjudication or determination in some way? None of the mechanisms that existed pre-ICTA have disappeared. They just moved to DOT. They just moved from the ICC to the DOT. Yeah. So somebody is today performing the function that the old, I think it was the Bureau of Enforcement of the ICC performed? Somebody in DOT is doing that now? Well, they'd like not to because Congress ‑‑ Well, at least in theory. In theory. They have the legal power to do it. They have the personnel to do it. The same people, by and large, are still there. But remember that the House said, among other things, that we don't want you wasting your budget on this. We want to solve this in the federal courts. So as a practical matter, these people may have a technical or on-paper remedy, but as a practical matter, if they go back to the Department of Transportation, they're going to get met with a sense that this isn't something we really do? Possibly. Possibly. I can't ‑‑ I don't know what the DOT will do. I know what they did in the first new prime case. The first case that went up was the new prime case. They combined the Eighth Circuit trial court case and the Sixth Circuit Arca Express case, took it up. Who took it up? The plaintiffs took it up. They were arguing that the matter should be ‑‑ have exclusive jurisdiction within the DOT. They were still fighting over whether a new right was created at that point. The DOT acknowledged that they had the right, but declined to assume exclusive jurisdiction, and that's in the first new prime case. So, yeah, I mean, the power is there. What they would do specifically in one of these cases, I don't know. In the real world, owner‑operators today have a huge amount of leverage. There's far more trucking companies that need them than there are owner‑operators to provide the services that are needed. I would say that the things that didn't exist before, the arguments about not just new plaintiffs, and indeed these are new plaintiffs with new motives, many of which are monetarily motivated. Before in the practice for the ICC, we didn't deal with things like attorney fees. We didn't deal with damages related to disgorgement. Normally what would happen would be the enforcement proceeding would order, if they found an abuse, they'd order the abuse corrected, and the carrier would correct the abuse. If there was restitution due on an escrow, in our case we had none of that. Ours is just, it's literal compliance with the rules. Here they're just seeking at this stage just an injunction, plus attorney fees. That's correct. That's correct. And, of course, that kind of remedy did not exist before the ICC. The injunction did, but the ICC would have, the Bureau of Enforcement would have had the money. Now, you never raised directly in your briefs, you know, any hint of lack of jurisdiction or standing. You know, the first hint of it came, I think, in your 28J letter, right? That's correct, Your Honor. The first time you cited new prime, although I think... The new prime came up after we were on appeal here. Well, I think it was decided before your brief was filed, but nonetheless it was not mentioned until that time. Now, just tell me briefly, what is your position on standing of the plaintiffs in this case? As shortly and as succinctly as you can. On seminal standing issues, our view is that there was no harm, there was no injury, there was no damage. Ergo, in our judgment, there's no standing in the plaintiffs. Judge, you know, the pretrial conference order stipulated that there was no harm to any of the plaintiffs that brought these actions. Judge Felzer found that. She gave the plaintiffs yet another chance in the second hearing on injunctive relief to try to articulate damage. We didn't raise jurisdiction issue because, for us, the question was, we divided this up into a series of summary judgments on the core issues that were brought before us, and she originally ruled that there would be no injunction. So we had the case won until she changed her opinion. And then we're back here. And are we flawed for not bringing up in our brief? I think we are. I don't think it's something we can waive, but I'll try to be quiet and ram it on. Okay. All right. All right. Thank you. You know, what I don't understand in this case is why the defendants, and Mr. Steffler is an owner of a trucking company, would not just agree to put these safety measures into a contract and even go to trial on it when they've plainly been in place since 1976 and these regulations protect the public. They didn't, they did not bring any, defendants didn't bring up anything about standing or jurisdiction, and Article III has always been there all the time that we've been trying this case. Unfortunately, it's still there. Yeah. Requiring a case or controversy. Was this issue ever specifically addressed to Judge Felder? Yes. Is this about jurisdiction and standing? Yes. I brought a motion to remand. And I, you know, I had a nice case in the State court, and I tried to get it back. It would have these problems. All I can say, you know, it's just what I said before, that she must have found some kind of a damage or she found that the statute applied, but no one appealed that. And I have some authority that, you know, once the ---- So your motion to remand was no federal question or what? Yeah, that there was Article III lack of standing, you know, was exactly what's being raised. And she denied that. Well, Article III lack of standing is not a basis for remand. That's a basis for dismissal. That's why she denied it. You know, I said the case shouldn't be here in federal court because I have a perfectly legitimate case under 17200, a business and professions code in the State court, and I won't have all these problems. And I brought it up not just in that motion, but over and over again. You can see it in the excerpts when we would appear. We discussed it with the court. She said, no, I have jurisdiction here. Of course, you've lost your state law claims now, haven't you? I'm sorry? I say you've lost your state law claims. Yeah, I may have lost them in the election that happened yesterday. That's what I was wondering. If he had anything left, he lost it in the election. He lost them last night. On the way here this morning. Yeah. It depends on what the effective date is. Yeah, I don't know. Yeah, that's right. That's correct. It depends on that. I don't want to lawyer your case for you. Actually, the DOT rejected, as Mr. Steffler very candidly said, the DOT rejected that new prime case because the DOT has been admonished by Congress, is what he was telling you, that they shouldn't be taking these cases, that the owner-operators should be the ones bringing these cases because there's limited resources that the government has. And I, as a private attorney, can't be bringing these cases either to protect the public, to get injunctions for people unless I'm going to get attorney fees. And I think, apparently, the Congress felt that we should get paid and we should be encouraged to take these cases. So that's why I'm asking for the attorney fees. The title of the statute, I think the Court knows, is not controlling. You know, I can't fight with what they titled, the little title that they put on the statute. But the way I read the statute, it says any person can bring the action for the injunction, which is what we did. Nothing further. Thank you. Thank you, counsel. We appreciate the argument. It's an interesting case, and the case is submitted. It will be adjourned for the day. All rise. Thank you.
judges: Tashima, Fisher, Tallman